UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
APR 22 2010
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

TYREE M. NEAL, SR., #05534-025

    Petitioner,

v.                               CIVIL ACTION NO. 2:09cv406

WARDEN OF FCC-PETERSBURG
PETERSBURG, VIRGINIA,

    Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2241. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

As a preliminary matter, and as more fully discussed, infra, the Court notes that the proper Respondent to this action is the Warden of FCC-Petersburg in Petersburg, Virginia. Accordingly, the Clerk is DIRECTED to amend the style of the case to reflect this change.

### I. STATEMENT OF THE CASE

#### A. Procedural History

On November 24, 2008, Petitioner submitted to this Court a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") as well as a Memorandum in Support of the Petition ("Petitioner's Memorandum") and an unsworn declaration ("Petitioner's Declaration"). This petition remained conditionally filed until April 16, 2009, when Petitioner submitted his $5.00 filing fee. Respondent filed a Motion to Dismiss ("Respondent's Motion to Dismiss"), accompanied by a Memorandum in Support ("Respondent's Memorandum") and Roseboro Notice. On December 28, 2009, Petitioner filed his Response to Respondent's Motion to Dismiss ("Petitioner's Response").[1]

The Court previously transferred this case to the District Court for the District of Colorado after having determined that jurisdiction for this petition properly lay there.[2] However, the

---

[1] The Court notes that pursuant to Local Civil Rule 7(K), Petitioner had twenty (20) days, computed pursuant to Federal Rule of Civil Procedure 6(a), plus three (3) days permitted by Rule 6(d) of said rules, within which to respond to Respondent's Motion to Dismiss. Therefore, Petitioner's response was due on December 14, 2009. Respondent's Motion to Dismiss was accompanied by a Roseboro Notice, advising Petitioner of the twenty (20) day response period. Petitioner's response was filed fourteen (14) days late, on December 28, 2009. Because Petitioner is proceeding pro se in this action, the Court excuses the untimeliness of his response, exercising its discretion pursuant to Federal Rule of Civil Procedure 6(b).

[2] When Petitioner filed his habeas petition with this Court on November 24, 2008, he was incarcerated at FCC-Petersburg. His petition properly identified the warden of that institution as the respondent. However, because Petitioner failed to submit the $5.00 filing fee required to file his petition, his petition remained conditionally filed. Sometime between February 20, 2009, and March 23, 2009, Petitioner was transferred from FCC-Petersburg to FCI Florence, located within the jurisdiction of the United States

2

case was returned to this Court from the District of Colorado,[3] and the Court now issues its Report and Recommendation on the petition in order to avoid jurisdictional ping pong.[4]

## B. **Background**

On June 11, 2001, the United States District Court for the Southern District of Illinois sentenced Petitioner to 137 months imprisonment for (1) conspiracy and possession with the intent to distribute cocaine and crack cocaine, and (2) distribution of crack cocaine and cocaine. Petitioner originally was incarcerated at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), and he currently is located at the United States

---

District Court for the District of Colorado. On April 14, 2009, Petitioner paid the filing fee, and on April 16, 2009, the Court ordered that the petition be filed. Because the petition was filed when Neal was in the custody of the Warden at FCI Florence, the Court determined that jurisdiction properly lay in the United States District Court for the District of Colorado. By Final Order entered July 13, 2009, this Court transferred the case to that jurisdiction.

[3] United States District Judge Zita L. Weinshienk of the District of Colorado subsequently transferred the case back to this Court citing the rule that for § 2241 cases, "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." Santillanes v. U.S. Parole Comm'n, 754 F.2d 887, 888 (10th Cir. 1985). While Santillanes is properly cited for the controlling principle of law, it should be noted that an issue exists as to the date Petitioner's petition was filed. While it is true that Petitioner was in this Court's jurisdiction when he initially submitted the instant petition, he was in the jurisdiction of the United States District Court for the District of Colorado when the petition was actually filed.

[4] Petitioner subsequently was transferred from FCI Florence, Colorado, to USP Marion, Illinois, where he is now located.

3

Penitentiary in Marion, Illinois. Decl. of Lynnell Cox ("Cox Decl."), ¶ 4; Resp't's Ex. 1. He is scheduled to be released from the Bureau of Prisons ("BOP") custody on January 21, 2011, via the projected earning of good time conduct. Id. Petitioner challenges the accuracy of this sentence computation, alleging that the Federal Bureau of Prisons ("BOP") inappropriately deducted Good Conduct Time ("GCT") after a guard caught Petitioner masturbating while he was lying on the bottom bunk in his cell. Id.

At approximately 12:30 a.m. on August 4, 2008, FCC Petersburg Prison Officer A. Delaney was conducting the 12:00 a.m. count when she "came upon cell #61," "shined [her] flashlight into the room," and "noticed inmate Neal #05534-025 lying on the bottom bunk with both of his hands stroking his erect penis in a forward and backward motion while staring at [her]." Incident Report. Officer Delaney issued an incident report at 01:07 a.m. charging Petitioner with a violation of Code 205, "Engaging in a Sex Act." Id. Lt. A. Coles signed the incident report, indicating that she delivered a copy of the incident report to Petitioner a few hours later at 08:15 a.m. on August 4. See id. Petitioner denies that he was given a copy of the incident report on August 4, and alleges that he first received a copy of the incident report on August 8, 2008.

On August 4, 2008, the same day as the incident, Lt. Coles conducted an investigation, reporting that Petitioner did not make any statements or request that any witnesses be interviewed on his

behalf. Investigation Report. Lt. Coles referred the matter to the Unit Disciplinary Committee ("UDC"). Id. On August 8, 2008, the UDC conducted its review and, due to the nature of the offense, referred the charge to the Disciplinary Hearing Officer ("DHO"). Id. Petitioner claims that he was provided a copy of the incident report for the first time at the UDC hearing. Pet'r's Decl. at 2. That same day, Petitioner was given notice of the DHO hearing and did not indicate that he wanted staff representation or witnesses present at the DHO hearing.[5] Notice of Discipline Hearing Before the DHO. On September 9, 2008, DHO Hise noticed that there was a typographical error in the incident report and sent the incident report to be corrected by Officer Delaney. DHO Report at 1. Officer Delaney corrected the error by revising section "5" of the incident report, changing the time of the incident to 12:30 a.m. from 12:50 a.m. See Incident Report; Cox Decl., ¶ 6; DHO Report at 1. That same day, Lt. Palmer provided Petitioner with a copy of the revised incident report. DHO Report at 1.

On September 10, 2008, Petitioner filed an appeal of the DHO decision, remedy number 507757-F1. See Cox Decl., ¶ 7. This petition was rejected because a DHO decision had not yet been made. The rejection notice delivered to Petitioner stated, "You need to

---

[5] Petitioner was unable to sign the notice because he was handcuffed behind his back. Instead, the form was signed and dated by a BOP staff member. See Notice of Discipline Hearing Before the DHO.

wait for a decision from the DHO and then you may file a BP-10 to the Regional Office." Id. On the same day, Petitioner filed another appeal, remedy number 507875-F1, which was rejected because it was not filed with the Regional Office. Id.

The DHO hearing was held on September 12, 2008. At the hearing, Petitioner claims that he told the DHO that he wanted to call witnesses. Pet'r's Decl. at 3. Petitioner claims that the DHO did not allow him to call witnesses. Id. Specifically, Petitioner states that the DHO explained that witnesses could only be called at the DHO hearing if they were first identified at the UDC hearing, and Petitioner had not in fact identified any witnesses at the UDC hearing. Id. Petitioner does not deny that he did not request at the UDC hearing that any witnesses be present at the DHO hearing.

At the DHO hearing, Petitioner made the following statement:

> I am not calling the officer a liar, but I do not have the slightest idea why she said I did that. I thought she was gone and I did not know they were coming back. I am not saying that I was not masturbating but I was not doing it for her and I was not staring at her.

DHO Report at 2. The DHO found that Petitioner did not actually deny that he was masturbating, only that he was doing it with the intention of having Officer Delaney observe it. Id. The DHO explained that whether Petitioner intended Officer Delaney to observe him or whether Petitioner was staring at Officer Delaney was irrelevant; engaging in a sexual act is prohibited, and the

6

presence of a staff member is only required to document the act. Id. The DHO found that the greater weight of the evidence supported the charge and found that Petitioner committed the prohibited act of "Engaging in Sexual Act," explaining, "[b]y engaging in intimate sexual contact with [himself], [Petitioner] threatened the staff's ability to provide a safe and orderly environment for all staff and inmates within the institution." Id. at 4. As punishment, the DHO deducted twenty-seven (27) days of GTC, imposed twenty (20) days of disciplinary segregation, and imposed three (3) months loss of Commissary. Id. at 3. Petitioner was given a copy of the DHO report, which described Petitioner's right to appeal the DHO's decision within twenty (20) calendar days. Id.

Petitioner claims that on September 12, 2008, the same day as the DHO hearing, he asked various prison staff members for forms in order to appeal the DHO decision, but was denied. Pet'r's Decl. at 4. He finally filed an appeal of the DHO decision, remedy number 509334-R1, on September 19, 2008. Id. This appeal was rejected because Petitioner used the form for a "sensitive issue" and Petitioner's claim was a "non-sensitive issue." Id. Petitioner was instructed to resubmit his appeal on the proper form. Id. There is no record that Petitioner filed an appeal or pursued any additional administrative remedies after September 19. Further, Petitioner does not claim to have attempted to pursue additional

administrative remedies. Consequently, Petitioner did not properly pursue any administrative remedies appealing the DHO's decision.

### C. Grounds Alleged

Petitioner now asserts that he is entitled to relief under 28 U.S.C. § 2241 on the grounds that the Respondent violated his due process rights, arguing that:

(1) FCC-Petersburg prison staff failed to give him written notice of the disciplinary charges against him within twenty-four (24) hours of the alleged incident as suggested by 29 C.F.R. § 541.15(a). See Pet'r's Mem. at iii.[6]

(2) The DHO hearing was not held within three (3) work days as suggested by 28 C.F.R. § 541.15(b). Id.

(3) The DHO hearing was not impartial. Id. at 1.

(4) Petitioner was not allowed to call witnesses at his DHO hearing. Id. at 6.

The Court notes that Petitioner is not challenging the DHO's findings or the sufficiency of the evidence. Pet'r's Resp. at 8.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion and Procedural Default

Although 28 U.S.C. § 2241 contains no explicit exhaustion requirement, a federal prisoner is generally required to exhaust administrative remedies before seeking relief under that statute. See Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999)

---

[6] The first three pages of Petitioner's Memorandum are numbered with roman numerals i through iii, and the following fourteen pages are numbered with arabic numerals 1 through 14.

(noting that prisoners had exhausted administrative remedies before seeking relief pursuant to § 2241).[7] In requiring a federal habeas petitioner to exhaust established administrative remedies before reviewing his grounds for relief, the Ninth Circuit noted:

> The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984) (quoting Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam)).

---

[7] The Court was unable to locate any published opinion by the Court of Appeals for the Fourth Circuit standing specifically for the proposition that a § 2241 petitioner's failure to exhaust administrative remedies is grounds for dismissal. See U.S.Ct. of App. 4th Cir. Rule 36(c) ("In the absence of unusual circumstances, this Court will not cite an unpublished disposition in any of its published opinions or unpublished dispositions."). However, the Court notes the existence of numerous unpublished opinions that stand for this proposition. See Johnson v. United States Parole Commission, 51 Fed.Appx. 471 (4th Cir. 2002) (per curiam) (finding that § 2241 petitioner's failure to exhaust administrative remedies precluded review); Ingram v. Dove, 38 Fed.Appx. 186 (4th Cir. 2002) (per curiam) (affirming dismissal of claims brought through § 2241 petition for failure to exhaust administrative remedies); United States v. Mercado, 37 Fed.Appx. 698 (4th Cir. 2002) (per curiam) (modifying district court order to dismiss § 2241 petition without prejudice for failure to exhaust administrative remedies); United States v. Harris, 11 Fed.Appx. 108 (4th Cir. 2001) (per curiam) (requiring § 2241 petitioner to exhaust administrative remedies); United States v. Clifton, 1 Fed.Appx. 120 (4th Cir. 2001) (per curiam) (affirming district courts dismissal of petition under § 2241 for failure to exhaust administrative remedies).

When appealing the actions of a DHO, an inmate is required to submit an initial appeal to the Regional Director for the region where the inmate is located. 28 C.F.R. § 542.14(d)(2). If the inmate is dissatisfied with the regional-level response, he may file an appeal with the National Appeals Administrator in the BOP Central Office, in Washington, D.C. 28 C.F.R. § 542.15(a), (b). The Central Office appeal is the final level of administrative review in the BOP administrative remedy process. Id.

In this case, Petitioner filed three administrative appeals: two on September 10, 2008, and one on September 19, 2008. All of these appeals were rejected because they were not properly filed. Remedy number 507757-F1 was rejected because it was filed before a final DHO decision was entered. See Cox Decl., ¶ 7. Remedy number 507875-F1 was rejected because it was not filed with the Regional Office.[8] Id. Remedy number 509334-R1, properly filed after the DHO hearing, was rejected because it was improperly submitted on a form for sensitive issues.[9] Pet'r's Decl. at 4. There is no record that Petitioner filed any administrative remedies after September 19, or that he was prevented from doing so.[10]

---

[8] The Court notes that remedy number 507875-F1 could also have been dismissed for the same reason as remedy number 507757-F1; it was filed before the DHO rendered its decision.

[9] It appears from the record that there are separate forms for which to appeal a sensitive and non-sensitive issues.

[10] Petitioner claims only that he was denied several requests for appeal forms on September 12, 2008. Due to the fact that

Consequently, Petitioner failed to properly file any administrative remedies appealing the DHO's decision. Petitioner failed to exhaust his administrative remedies in this case.

Petitioner could not now exhaust his administrative remedies, as the deadline for appealing a DHO decision to the Regional Director is twenty (20) calendar days. 28 C.F.R. § 542.15(a). When a habeas petitioner fails to exhaust administrative remedies and, as a result, loses the opportunity to pursue them, his claims will be procedurally defaulted in a § 2241 proceeding. See Brown v. Smith, 828 F.2d 1493, 1495 (10th Cir. 1987)(per curiam). However, for inmates who meet certain requirements, an extension of time in which to file an Administrative Remedy Request may be granted. 28 C.F.R. § 542.14(b). Because the Court is unable to speculate whether Petitioner may meet those requirements, the Court does not specifically find Petitioner's claims to be procedurally defaulted. Accordingly, the Court will consider Petitioner's claims on the merits.

## B. Procedural Due Process

Inmates must be afforded procedural due process protections before they can be deprived of their protected liberty interest in

---

Petitioner filed an appeal on September 19, it is clear that he was eventually successful in his attempt to obtain an appeal form. Petitioner does not claim that any BOP staff member denied his request for additional forms after September 19, 2008, and there is nothing to indicate to the Court that Petitioner could not file his appeal on the correct form as directed by the staff. See Pet'r's Decl. at 4-5.

11

good time credits. Wolff v. McDonnell, 418 U.S. 539, 563 (1974). In Wolff, the Supreme Court outlined procedural safeguards to which inmates are constitutionally entitled: (a) giving the prisoner written notice of the charges at least twenty-four (24) hours before the disciplinary hearing; (b) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action; (c) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals; (d) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and (e) providing impartial fact finders. Id. at 564-71. For the reasons stated below, the Court finds that all of Petitioner's alleged due process violations are without merit.

1. Claim (1): Failure to Provide Petitioner with Written Charges within Twenty-Four (24) Hours of the Incident

Petitioner claims that his due process rights were violated because he was not provided with a written copy of the charges against him within twenty-four (24) hours of the incident. See Pet'r's Mem. at iii. The incident report, which contains a listing of the charges against Petitioner, indicates that a copy was

12

provided to Petitioner on August 4, 2008, at 08:15 a.m., less than twelve (12) hours after the incident. See Incident Report. Petitioner, however, claims that he was first provided with a copy of the incident report at the UDC hearing on August 8, 2008, four (4) days after the incident. See Pet'r's Decl. at 2.

Under 28 C.F.R. § 541.15(a), "[S]taff shall given each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(a)(emphasis added). This rule is not "nondiscretionary" as Petitioner claims. See Pet'r's Mem. at iii. Rather, it lays out a suggested practice. The real test for determining whether Petitioner's due process rights have been violated is whether Petitioner was provided a written copy of the charges at least twenty-four (24) hours before the DHO hearing as required by Wolff. See also Teoume-Lessane v. Bolyard, 2008 WL 4283522 at *3 (N.D. W. Va. Sept. 17, 2008). In this case, Petitioner admits that he was given a written copy of the charges at his UDC hearing on August 8, 2008, and that the DHO hearing was held on September 12, 2008. Therefore, Petitioner was given a written copy of the charges more than a month before the DHO hearing, well exceeding the twenty-four (24) hours required by Wolff. Accordingly, the Court finds that Petitioner's due process rights were not violated as to claim (1).

## 2. Claim (2): Failure to Hold the UDC Hearing within Three (3) Work Days of the Incident

Petitioner claims his due process rights were violated because the initial UDC hearing, held on August 8, 2008, was not held within three (3) work days of the incident, which occurred on August 4, 2008. Pursuant to 28 C.F.R. § 541.17(g), inmates are entitled to an initial hearing before the UDC, <u>ordinarily</u> held within three (3) work days from the time the staff became aware of the inmate's involvement with the incident. 28 C.F.R. § 541.17(g) (emphasis added). This three (3) day period does not include the day staff became aware of the inmate's involvement in the incident, weekends, and holidays. <u>Id.</u>

In this case, BOP staff became aware of the incident on August 4, 2008, and this day is excluded from the three (3) day time period. Calculating from a start date of August 5, 2008, Petitioner's UDC hearing was held on the fourth day after the incident. In his report, the DHO noted "the delay in the discipline process, specifically the UDC hearing." DHO Report at 2. The DHO explained, "[t]he reason for the delay was documented by the UDC and the DHO determined this very short delay did not impede your ability to prepare a defense to the charge against you." <u>Id.</u> While Petitioner may not have had his initial hearing before the UDC within the three (3) day time period suggested by 28 C.F.R. § 541.17(g), he has failed to show that the one (1) day

14

delay harmed his ability to defend himself at the DHO hearing or impacted his ability to appeal the DHO's ultimate findings of guilt or sanctions. Therefore, this Court finds that the UDC hearing held one (1) day outside the three (3) day time period suggested by 28 C.F.R. § 541.17(g) does not violate Petitioner's due process rights.

### 3. Claim (3): Failure to Provide an Impartial Hearing Officer

Petitioner claims that his due process rights were violated because the DHO was not impartial. In order to ensure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO. 28 C.F.R. § 541.16(b). In this case, Petitioner claims that DHO Hise acted improperly by sending the incident report back to the reporting officer in order to correct a typographical error. Specifically, Petitioner claims that by sending the incident report back to Officer Delaney, DHO Hise took on an investigatory role and was no longer able to be impartial. Pet'r's Mem. at 1.

Due process requires disqualification of a decision maker who was directly or substantially involved in the underlying incident, Gaither v. Anderson, 236 F.3d 817, 820 (7th Cir. 2000), but an adjudicator is entitled to a presumption of "honesty and integrity" absent clear and evidence to the contrary, see Withrow v. Larkin, 412 U.S. 35, 47 (1975). In this case, it is true that DHO Hise,

after noticing a typographical error on the incident report, returned the incident report to the reporting officer for correction. However, DHO Hise's actions did not render him "directly or substantially involved" in the underlying incident. His actions were not conducted as part of an investigation or with an investigatory purpose. There is no evidence to rebut the presumption of DHO Hise's impartiality. Consequently, this Court finds that Petitioner's due process rights were not violated as to claim (3).

### 4. Claim (4): Failure to Permit Petitioner to Call Witnesses at the DHO Hearing

Finally, Petitioner claims that his due process rights were violated because he was unable to call witnesses at the DHO hearing. Pet'r's Mem. at 9. Inmates have the right to call witnesses at the DHO hearing, provided that calling the witnesses will not jeopardize institutional safety. Wolff, 418 U.S. at 564-71. Petitioner was advised of this right when he received notice of the DHO hearing on August 8, 2008. See Notice of Discipline Hr'g. The notice informed Petitioner that he had "the right to call witnesses at the [DHO] hearing...provided, calling your witnesses will not jeopardize institutional safety." Id. The notice provided space for Petitioner to list the names of the witnesses we wanted to call and and summarize the contents of each witness's testimony. Id. The notice indicates that Petitioner did not want to call any witnesses and does not list any names. Id.

16

Although Petitioner was not able to sign the notice himself because he was handcuffed, a prison staff member signed and dated the notice on his behalf. Id.

Petitioner does not dispute that he was given proper notice of his right to call witnesses before the DHO hearing or that he failed to exercise his right according to the notice's procedures; he simply alleges that, during the course of the DHO hearing, he requested that Lt. Coles be called as a witness. Pet'r's Mem. at 9. Petitioner was provided process with which to call witnesses at the DHO hearing. Petitioner's failure to take advantage of this process does not lead to a violation of his due process rights.[11] Consequently, this Court finds that Petitioner's due process rights were not violated with respect to claim (4).

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Petitioner's petition for writ of habeas corpus be DENIED and that

---

[11] Even it Petitioner had properly exercised his right to call Lt. Coles at the DHO hearing, the DHO would have been authorized to deny Petitioner's request. The DHO need only call witnesses "who have information directly relevant to the charges(s)." 28 C.F.R 541.71(c). Petitioner wanted to call Lt. Coles to establish that Petitioner did not receive a copy of the incident report within twenty-four (24) hours of the incident. Petitioner does not allege that Lt. Coles had any knowledge of the actual incident. Therefore, even if Petitioner had listed Lt. Coles on the DHO notice, the DHO would have been permitted to refuse to call her at the DHO hearing.

all of Petitioner's claims be DISMISSED WITH PREJUDICE.

Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

## VI. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will

result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 153-54 (1985); Carr v. Hutto, 737 F.2d 433, 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

/s/ Bradford Stillman
United States Magistrate Judge

Norfolk, Virginia

April 22, 2010

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Tyree M. Neal Sr., #05534-025
USP Marion
P.O. Box 1000
Marion, IL 62959
PRO SE

Joel Eric Wilson, Esq.
Senior Assistant Attorney General
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
COUNSEL FOR RESPONDENT

Fernando Galindo,
Clerk of Court

By: /s/
Deputy Clerk
April 22, 2010